## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 1:00-CR-119-03 |
| v. : | |
| : | (Judge Kane) |
| JOHN WATSON, : | |
| Petitioner : | |
| : | |

## MEMORANDUM AND ORDER

Before this Court is Petitioner's second amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. (Doc. No. 266.) On January 27, 2005 and February 11, 2005, the Court held two evidentiary hearings on Petitioner's claims. This matter has been fully briefed and is ripe for disposition. For the reasons that follow, Petitioner's motion will be denied.

**I.  Background**

Petitioner John Watson was indicted by a grand jury on charges of criminal conspiracy and unlawfully distributing and possessing with the intent to distribute fifty (50) grams or more of crack cocaine. (Doc. No. 271 at ¶ 1.) Attorney Timothy J. O'Connell was appointed to represent Petitioner.[1] Following a bench trial held November 21-27, 2000 before this Court, the Court found Petitioner guilty as to Count VII of the indictment for delivery of crack cocaine in excess of fifty grams and not guilty as to Count VIII for criminal conspiracy. Consequently, Petitioner was sentenced to a term of imprisonment of 360 months and a $2,000 fine. Petitioner

---

[1] Attorney Greg Abeln was the first attorney appointed to represent Petitioner. However, the Court allowed Attorney Abeln to withdraw from representation of Petitioner due to Petitioner's complaints of incompatibility. Attorney Thomas A. Thornton of the Federal Public Defender's Office was the second attorney appointed to represent Petitioner. Attorney Thornton also withdrew from representation of Petitioner. Finally, Attorney Timothy J. O'Connell was appointed to represent Petitioner and did so through the completion of the bench trial before this Court. After filing an appeal for Petitioner, Attorney O'Connell also withdrew. Attorney Anser Ahmed currently represents Petitioner.

filed a timely appeal to the United States Court of Appeals for the Third Circuit arguing: (1) the drug quantity was not established beyond a reasonable doubt; (2) Petitioner was not a career offender; and (3) the evidence was insufficient to establish that the drug was crack cocaine. Attorney O'Connell subsequently filed a motion to withdraw from representation of Petitioner and the Third Circuit granted his motion. On March 5, 2002, the Third Circuit affirmed the decision of this Court and upheld his sentence of 360 months imprisonment. Petitioner thereafter filed this second amended writ of habeas corpus pursuant to 28 U.S.C. § 2255 which is now before this Court.

## II. Discussion

An evidentiary hearing is required by § 2255 "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see also U.S. v. Baynes, 622 F.2d 66, 68 (3d Cir. 1980). Where the record affirmatively indicates that a Petitioner's claim for relief is without merit, the claim may be decided on the record without a hearing. See Government of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985); Page v. United States, 462 F.2d 932, 933 (3d Cir. 1972). Thus, if the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted in support of a § 2255 motion, or if the movant would not be entitled to relief as a matter of law even if the factual predicates as alleged in the motion are true, it is not an abuse of discretion to elect not to conduct an evidentiary hearing. See Nicholas, 759 F.2d at 1075. "[B]ald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing." Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir. 1987). On January 27, 2005, the Court held an evidentiary hearing, allowing Petitioner to offer evidence and testimony regarding any of the

2

claims raised in the above writ of habeas corpus. Because Petitioner was unable to produce certain witnesses, a second hearing was held on February 11, 2005. Having given Petitioner a chance to supplement the record, the Court will now discuss each claim in turn.

### A. Federal Sentencing Guidelines Range

Petitioner argues that the Court erred by not applying the "clear and convincing standard" of United States v. Kikumura, 918 F.2d 1084 (3d Cir. 1990). The court in Kikumura concluded that a court must have clear and convincing evidence to justify a substantial upward departure from the median of an applicable guideline range. Id. at 1102. This Court sentenced Petitioner according to the Federal Sentencing Guidelines based on Petitioner's status as a career offender, the nature of the charges, and the amount of drugs involved. Petitioner was convicted of possession with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1). Under the Federal Sentencing Guidelines, this offense coupled with Petitioner's two prior felony drug convictions warrants a sentence of 360 months to life imprisonment. See 21 U.S.C. § 841(a)(1); 18 U.S.C. Appx. § 4B1.1; 18 U.S.C. Appx. § 2D1.1. As Petitioner received a 360 month sentence, there was no upward departure in the median sentencing range in Petitioner's case. Therefore, Kikumuru is inapplicable to this case.

In addition, Petitioner argues that the Court erred in estimating the drug quantity it used to sentence Petitioner. Petitioner cites United States v. Davis, 981 F.2d 906 (6th Cir. 1992) to support his argument that the Court should have found Petitioner guilty of an amount less than fifty (50) grams. Like Davis, no drugs were seized in the instant matter. However, Petitioner overlooks the fact that the government in Davis did not present any evidence as to the amount of cocaine involved. In this case, Respondent presented testimony from witnesses that enabled the

3

Court to determine the quantity of cocaine attributable to Petitioner. Petitioner also fails to acknowledge that the Sixth Circuit ruled that the district court may hold the "[Petitioner] responsible for a specific quantity of drugs" if "the court can conclude the [Petitioner] is more likely than not actually responsible for a quantity greater than or equal to the quantity for which the [Petitioner] is being held responsible." Id. at 911 (quoting United States v. Walton, 908 F.2d 1289, 1302 (6th Cir. 1990). Further, "if the exact amount cannot be determined, an estimate will suffice . . . but a preponderance of the evidence must support the evidence." Id. The Third Circuit has ruled that the government can satisfy this burden by presenting specific and reliable evidence to support its contentions. See United States v. Brigman, 350 F.3d 310, 313 (3d Cir. 2003). Based upon the evidence at trial, the Court was able to conclude that at least fifty (50) grams was an accurate amount.

Petitioner argues that the Court improperly concluded that Petitioner was a career offender. The United States Sentencing Guidelines provides that, "[p]rior sentences imposed in unrelated cases are to be counted separately." 18 U.S.C. Appx. § 4A1.2(a)(2). However, Application Note 3 of § 4A1.2 provides that, "prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." 18 U.S.C. Appx. § 4A1.2, Application Note 3. The Third Circuit has ruled that, "'scheme' and 'plan' are words of intention, implying the [events] have been jointly planned, or at least that it have been evident that the commission of one would entail the commission of the other as well." United States. v. Hallman, 23 F.3d 821, 826 (3d Cir. 1994). Furthermore, "[a] crime merely suggested by or arising out of the commission of a previous crime is not . . . related to the earlier crime in the

4

special sense of being part of a common scheme or plan." Id. (citing United States v. Coleman, 947 F.2d 167, 1271 (10th Cir. 1991)).

Petitioner was convicted of two prior felony drug offenses, which served to enhance his sentence as a "career offender" under the Federal Sentencing Guidelines. See 18 U.S.C. Appx. § 4B1.1. On November 17, 1988, Petitioner made a controlled delivery of powder cocaine to an undercover officer in Harrisburg. (Doc. No. 266.) On November 22, 1988, Petitioner was arrested for possession of powder cocaine while on the New Jersey Turnpike. (Id.) These two offenses were several days apart and occurred in different states. (Id.) Petitioner argues that these two crimes fall within the same "scheme" and should be considered as a single drug offense, stating that "it is inconceivable for one not to believe that one offense [sale of cocaine], would not entail commission of the other [possession with intent to deliver], as one must obtain a substance from some source before it is sold." (Id.) What Petitioner neglects to consider in his argument is that the sale offense proceeded the possession offense.

Petitioner also points to several similarities between the offenses, such as "same victims (society), similar modus operandi (profit through drug sales), and animated by the same motive (to make money quickly)." (Id.) However, these similarities could be said of every opportunistic crime. Petitioner succeeds in convincing the Court that in 1988, he was running a small cocaine business and that these offenses were a necessary product of running that business. However, these facts show Petitioner obtained and sold cocaine to the undercover officer and then went back to New Jersey to obtain new drugs for the purpose of new sales. Although these acts may fall under a general business scheme, they do not constitute a single coherent operation as to consider them a single offense for sentencing purposes. A successful sale of drugs does not

inevitably entail the continued purchase and sale of future drugs. Petitioner's ignorance that he was being watched by county police does not join together all criminal acts committed by Petitioner during the observation period. The Court properly concluded that Petitioner was a "career offender" as defined by the Federal Sentencing Guidelines. See 18 U.S.C. Appx. § 4B1.1. Therefore, the Court did not err in calculating Petitioner's sentence and this claim will be denied.

**B.      851 Petition**

Petitioner argues that the Court erred in considering the prior drug convictions as a sentence enhancement for recidivism, since the Government did not properly file a notice of intent in the form of an 851 petition. (Doc. No. 266.) However, Petitioner was not sentenced as a recidivist, but was sentenced as a career offender. Therefore, this claim is without merit and will be denied.

**C.      Due Process Rights**

Petitioner argues that the Court violated Petitioner's due process rights by holding the prior drug convictions as "serious drug offenses" under the Armed Career Criminal Act ("ACCA"). (Id.) However, Petitioner was not sentenced under ACCA, but as a career offender pursuant to the Federal Sentencing Guidelines. See 18 U.S.C. Appx. § 4B1.1. Since Petitioner met all three requirements under section 4B1.1, he was properly classified as a career offender for sentencing purposes. Therefore, this claim is also without merit and will be denied

**D.      Extension of Time**

Petitioner argues that the Court erred in permitting the Government to file an untimely response. Petitioner filed his amended petition for Writ of Habeas Corpus on May 20, 2003.

(Doc. No. 254.) The Court conducted a preliminary review of the motion and ordered the Government to respond within twenty days after June 26, 2003. (Doc. No. 255.) The Government timely filed a motion for extension of time to file on July 17, 2003, to which Petitioner's counsel gave his consent. (Doc. No. 256.) "[E]xtensions before expiration of the time period may be [made] 'with or without motion or notice'" Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 896 (1990)(quoting Fed. R. Civ. P. 6(b)). The Court has discretion to grant extensions and has extended this courtesy to both parties. The Court did not err in granting the Government's motion for extension of time. Accordingly, this claim will be denied.

E.  **Ineffectiveness of Counsel**

The Supreme Court established a two-prong test in determining whether counsel was so ineffective as to constitute a violation of a defendant's right to counsel. Strickland v. Washington, 466 U.S. 668, 687 (1984). "A petitioner must show (1) that counsel made errors so serious that counsel's representation fell below an objective standard of reasonableness, and (2) that such failure resulted in prejudice so as to deprive the petitioner of a fair trial, that is, a trial whose result is reliable." Zettlemoyer v. Fulcomer, 923 F.2d 284, 295 (3d Cir. 1991)(citing Strickland, 466 U.S. at 687-688). Both prongs must be satisfied before a conviction is overturned based on ineffectiveness of counsel. Strickland, 466 U.S. at 687.

The first prong of Strickland is met if counsel's performance "fell below an objective standard of reasonableness." Id. at 688. "Judicial scrutiny in this regard, however, is highly deferential." Affinito v. Hendricks, 366 F.3d 252, 258 (3d Cir. 2004). See also Strickland, 466 U.S. at 689. The Court in Strickland observed:

It is all too tempting for a defendant to second-guess counsel's assistance after

> conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

Strickland, 466 US. at 689 (internal citation omitted). The Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. Although counsel has a duty to investigate, counsel may reasonably decide that certain investigation is unnecessary. Strickland, 466 U.S. at 691.

The second Strickland prong may be reached only after the first is demonstrated. Affinito, 366 F.3d at 258. To establish prejudice requires a showing that, but for alleged deficiencies of counsel, the outcome of the case would have been different. Hess v. Mazurkiewicz, 135 F.3d 905, 909 (3d Cir. 1998). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "Because counsel is afforded a wide range within which to make decisions without fear of judicial second-guessing, we have cautioned that it is 'only the rare claim of ineffectiveness of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance.'" Buehl v. Vaughn, 166 F.3d 163, 169 (3d Cir. 1999) (quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

Petitioner asserts three grounds upon which he claims he was denied effective assistance of counsel: 1) prior counsel's failure to argue that the sentencing court erred in determining the

amount of drugs, 2) prior counsel's failure to attach an essential brief in support, and 3) prior counsel's failure to properly advise Petitioner to accept an offered plea agreement. (Doc. No. 266.)

As to the first ground, the Court did not err in calculating Petitioner's sentence. See Section II. A, supra. Counsel cannot be found ineffective for failing to raise a claim that lacks merit. Singletary v. Blaine, 89 Fed. Appx. 790 (3d Cir. 2004) (non-precedential opinion), (citing Moore v. Deputy Commissioner of SCI-Huntingdon, 946 F.2d 236, 245 (3d Cir. 1991)). As this claim lacked merit, prior counsel was not ineffective in failing to appeal this issue.

Petitioner further argues that prior counsel violated his Sixth Amendment right to effective assistance in not filing a brief in support of his motion to dismiss indictment. (Doc. No. 266.) Petitioner contends that the indictment was based upon perjured testimony by Agent Patrick Kelly. Petitioner claims that counsel's ineffectiveness prejudiced him because, had the motion to dismiss been filed properly with relevant "substantial case law," there is a reasonable probability that the Court would have granted the motion and dismissed the indictment.

Local Rule 7.30 requires a party to submit a brief in support within thirty days of filing a post-trial motion, or the motion will be deemed withdrawn. In the instant case, prior counsel failed to file a brief in support, causing Petitioner's motion to dismiss to be deemed withdrawn. At the January 27, 2005 hearing, Attorney O'Connell testified that he allowed the motion to be withdrawn because he felt the indictment was sufficient. Specifically, Attorney O'Connell testified that:

> A.   The only thing that I can think of that [Petitioner] wanted done that I did not do was -- and he referred to it in his direct testimony. He wanted a motion to dismiss the indictment because of some defect which even now, after hearing him testify,

9

>    was never clear to me as to what that was. But --
>
> Q. Did you review the indictment?
>
> A. I did.
>
> Q. Did it appear sufficient to you?
>
> A. It did.
>
> Q. So you made the decision not to pursue it because of your review of the indictment?
>
> A. That is correct. But in every other respect I tried to accommodate whatever request that [Petitioner] had with regard to his defense, as well as -- and sort of dovetailed them into what I would do ordinarily and did do.

(January 27, 2005 Hearing Transcript, 69-70.) Attorney O'Connell decision not to spend precious pre-trial time pursuing this claim is a strategic legal determination based upon his examination of the indictment. An attorney's strategic choices made after a thorough investigation "are virtually unchallengeable." Strickland, 466 U.S. at 690-91. Attorney O'Connell was not ineffective merely because he did not agree with Petitioner's "legal opinion" about the sufficiency of the indictment. Moreover, the Court finds nothing in the record that would have caused the Court to grant Petitioner's motion to dismiss the indictment, had the motion been properly before it. Accordingly, Petitioner's Sixth Amendment rights were not denied by former counsel's decision not to pursue this motion.

Lastly, Petitioner claims that Attorney O'Connell was ineffective in failing to properly advise Petitioner to accept an offered plea agreement. Attorney O'Connell testified that Petitioner always maintained "an unwavering position of innocence, and there was just no point in pursuing anything along the lines of a plea agreement." (January 27, 2005 Hearing Transcript,

at 71.) The Court notes that Petitioner fervently insisted upon his innocence during trial and continues to portray himself as the victim of prosecutorial misconduct in his briefs.[2] Petitioner never requested that Attorney O'Connell inquire about the possibility of a plea agreement and Petitioner's position on his innocence left Attorney O'Connell with the impression that no agreement would be accepted if offered. (Id., at 70-73.)

On the first day of trial, during an in chambers conference, the Government informally hinted at the possibility of a plea agreement. (Id., at 70-71.) This preliminary offer was in the range of four to five years, was not in writing, and did not include many details. (Id.) Attorney O'Connell's "impression was that if there was any interest in something that would involve serving that amount of time, the details would then have to be worked out, and whether that would involve cooperation on his part or things of that nature, if there was some general interest there, then we would have to hash out the details." (Id., at 71-72.) Attorney O'Connell conveyed the offer to petitioner "in the same [informal] way that I just conveyed it today, because that's the way it was conveyed to me at the time. And as I recall, there was virtually no interest on Mr. Watson's part. He maintained the same position that he had always maintained, that was that he was innocent and he wasn't pleading guilty under any circumstances. . . . There was no discussion at that point and there was no mention of it up until today, so far as I'm aware of. There was no correspondence about it, no discussion of it after that day." (Id., at 72.)

The testimony from members of Petitioner's family and friends who were present at the

---

[2]   In his reply to the government's brief in opposition, Petitioner states, "The defendant submits that the entire crime was in fact contrived in the instant case . . . ." (Doc. No. 276.)

11

time Attorney O'Connell informed Petitioner of the informal offer, does not contradict Attorney O'Connell's testimony. The record demonstrates that Attorney O'Connell informed Petitioner of the details that had been offered, that Petitioner thought about the offer, and that the offer was rejected. Although Petitioner may have been under considerable pressure in pondering such decisions immediately before trial commenced, this was the product of the Government's timing, not Petitioner's counsel. Moreover, since no plea agreement was even in writing, had Petitioner indicated a willingness to plead guilty in exchange for a lesser sentence, an actual agreement would have had to have been negotiated and crafted. The uncertainties regarding the terms of the agreement were not the fault of Attorney O'Connell, but merely reflected the preliminary nature of the agreement offered.

Attorney O'Connell did not provide ineffective assistance of counsel with regard to the last minute plea agreement offer. The record shows that he presented Petitioner with all of the details that had been provided to him, explained the range of sentence he may receive if he proceeded with a trial and lost, and Petitioner chose not to pursue negotiations. (Id., at 75-76.) As Petitioner's mother testified, "I believe that my son is a very intelligent young man who makes his own decisions." (Id., at 62.) Accordingly, Petitioner's claim of ineffective assistance of counsel will be denied.

    F.    **Opening and Closing Arguments**

Petitioner further argues that the Court erred in failing to transcribe the opening and closing arguments. (Doc. No. 266.) The Court Reporter Act states, in pertinent part, "each session of the court . . . shall be recorded verbatim[, including] . . . all proceedings in criminal cases had in open court . . . ." 28 U.S.C. § 753(b). Specifically, Petitioner asserts that his failure

12

to have the government's opening and closing statements prejudiced his efforts on appeal. (Doc. No. 266.) This claim is without merit and factually incorrect. The record clearly indicates that neither party made oral opening statements at trial:

| | |
|---|---|
| Behe: | This is the matter of the United States of America v. John Watson, docketed to Criminal No. 00-119-03. . . . I filed a trial memorandum with the Court, and I would ask that Your Honor accept that in lieu of an opening statement with regards to the government's case. |
| The Court: | Thank you, I will do so. . . . Mr. O'Connell, are you prepared to proceed? |
| Mr. O'Connell: | Yes, Your Honor. [Defense Counsel requests that two witnesses be sequestered.] |

\* \* \*

| | |
|---|---|
| The Court: | I don't think that's a danger with the case agents, and I'll permit Mr. Behe to retain them in the courtroom. Is there anything else preliminarily? |
| Mr. Behe: | No, Your Honor. |
| Mr. O'Connell: | No, Your Honor. |
| The Court: | Mr. Behe, your first witness. |

(November 21, 2000 Trial Transcript, at 9-10.) Moreover, contrary to Petitioner's assertion, the transcript does contain the parties' closing arguments. (November 27, 200 Trial Transcript, at 427-69.) In fact, the trial record contains over forty pages of closing arguments. The Court finds no indication that the court reporter failed to transcribe any portion of the three day proceeding. Accordingly, this claim will be denied.

13

III. **ORDER**

AND NOW, this 23th day of February, 2005, **IT IS HEREBY ORDERED THAT** Petitioner's 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence (Doc. No. 81) is **DENIED**. The Clerk of Court is directed to close the file.

_____
Yvette Kane
United States District Judge