IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA       :

    v.                            :   CRIMINAL NO. 1:CR-00-119-03
                                      (Judge Kane)
JOHN WATSON,                   :
        Defendant


TRANSCRIPT OF PROCEEDINGS

HEARING TO REVIEW DETENTION ORDER

    Before:   Hon. Yvette Kane, Judge

    Date:     August 11, 2000

    Place:    Courtroom No. 4
              Federal Building
              Harrisburg, Pa.

FILED
HARRISBURG, PA
JUL 05 2005
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

COUNSEL PRESENT:

    ERIC PFISTERER, Assistant U.S. Attorney

        For - Government

    GREGORY B. ABELN, Esquire

        For - Defendant


Monica L. Zamiska, RPR
Official Court Reporter

1   THE COURT: Good morning, Mr. Pfisterer.

2   MR. PFISTERER: Good morning, Your Honor.

3   MR. ABELN: Good morning, Your Honor.

4   MR. PFISTERER: Your Honor, this matter is the

5   United States of America v. John Watson, indexed at Criminal

6   No. CR-00-119-03. Your Honor, I'm standing in for Mr. Behe

7   this morning, and I understand we're here on a motion for the

8   district court to review the detention order of Judge Smyser

9   in this case.

10  THE COURT: That's correct. Mr. Abeln.

11  MR. ABELN: Yes, Your Honor, we had an indictment

12  filed on April 12, 2000, and my client appeared the following

13  day after responding to the call of the authorities and

14  turning himself in. We had a detention hearing right on the

15  spot at the time that I was appointed. I did not have a

16  chance to discuss Mr. Watson's background with him at that

17  point and could not really comment to the Court on his

18  resources that he had in the community. I have since now

19  spoken with him and several members of the community and

20  because the trial has been continued twice in this matter, we

21  are asking that the detention be revisited.

22  THE COURT: Mr. Pfisterer.

23  MR. PFISTERER: Your Honor, at least initially the

24  government intends to rely on the presumption in this case.

25  I'm sure, as the Court is aware, because the grand jury found

1   probable cause to believe that Mr. Watson was involved in a
2   conspiracy to distribute in excess of 50 grams of crack
3   cocaine there is, while it's rebuttable, there is a
4   presumption in favor of his detention in this case because
5   drugs and the harm that they cause is perceived to be a
6   danger to the community.
7            Also in this case I'd like to point out to the
8   Court's attention that our detention motion was also based on
9   the fact that Mr. Watson has a significant criminal history
10  that does involve drugs, and that in fact he was on parole at
11  the time that he committed this offense, at least that the
12  grand jury found probable cause to believe that he committed
13  this offense, so he was already in a supervised status.
14           As Mr. Abeln's motion tends to point out, while
15  there are other options available to the Court that would
16  involve supervision, monitoring, living in particular
17  residences, actually that's what he was doing at the time he
18  committed this offense.
19           This is a conspiracy over a one year period
20  involving a significant amount of cocaine, and there is
21  nothing presented in the motion which would ameliorate the
22  potential harm if Mr. Watson is allowed to be released and to
23  be in a position to continue to sell drugs.
24           THE COURT: Mr. Abeln, does the defendant have
25  anything to offer this morning to rebut the presumption that

1   he would pose a danger to our community?

2   MR. ABELN: His testimony, Your Honor, the fact
3   that he has been a resident of this particular area for a
4   long period of time. He has contacts in the community that
5   would assist him in trying to get a job if he were released.

6   There is also the aspect we have received a copy of
7   the application for the search warrant which has the probable
8   cause affidavit dealing with the house in question where this
9   conspiracy allegedly took place, and the affidavit is quite
10  detailed, in fact it goes almost 15 pages long, and this is
11  the affidavit that led to the referral to the federal
12  government on the co-defendants which are Larnell Morrison
13  and also Tom Elliot. Throughout the entire warrant there is
14  not one mention of my client, and we are saying that based
15  upon the government's assertion that this is a conspiracy,
16  there has been no evidence whatsoever that has been revealed
17  to me through discovery that links my client to any illegal
18  activity whatsoever, and he feels that he is not guilty of
19  this particular charge and desires a trial in this matter,
20  and his release to assist me in further investigation and
21  verifying the things that he said would greatly help me.

22  MR. PFISTERER: Your Honor, while those are all
23  matters certainly that the Court can consider and are
24  obviously concerns of the defense, they don't directly go to
25  the issue of dangerousness to the community, and that is what

1    the Court has to decide here this morning, not whether it
2    would be more convenient or easier for Mr. Watson to do what
3    he needs to do to get ready for trial, and, of course, the
4    fact that an affidavit in an early part of this investigation
5    doesn't disclose much about the defendant says nothing about
6    what the rest of the investigation disclosed or what was
7    presented to the grand jury.
8         Often in drug cases like this a significant portion
9    of the evidence is witness evidence from people who we tell
10   we will not because we have the ability to protect them,
11   disclose their identity and the information they provided
12   until just prior to going to trial to protect them and for
13   their safety.  And the courts here routinely recognize that
14   is our practice that we don't disclose those names and
15   statements until the Friday before Monday's jury selection,
16   and that is probably a significant reason why Mr. Watson
17   doesn't have what appears to be an overwhelming amount of
18   information about what the government's belief is in his role
19   in this conspiracy, but I assure the Court that that evidence
20   exists, that's what was presented to the grand jury, and in
21   due course that will be provided to the defense.
22         THE COURT:  Mr. Abeln, does the defendant dispute
23   the government's representation that he has suffered prior
24   drug convictions and that he was on parole when this alleged
25   offense occurred?

1           MR. ABELN:  No, Your Honor, he has -- and I have
2   asked his state parole officer Miss Jerri Williard, who is in
3   the regional office here in Harrisburg, to appear this
4   morning, but I have only been able to get her answering
5   machine, but I understand through the sources that I have
6   been able to check that he has -- since he's been on parole
7   for an incident that occurred a long time ago in New Jersey,
8   he has had no technical violations during this period of
9   time.  He has reported and has not been a concern to the
10  parole people.  So only through my client's testimony am I
11  able to present and rebut the concept that he is a danger to
12  the community.
13          He has been drug free.  He has not had any charges
14  against him that would show that since 1989 that shows that
15  he has had any contact with drugs or anything like that, and
16  he does have the opportunity to explain the one charge that
17  has been alleged in the pretrial memorandum services report
18  which indicates that by the Harrisburg Police Department that
19  he had originally been charged with aggravated assault and
20  recklessly endangering, and that charge was dismissed.  So
21  other than the possession of cocaine back in 1988, he
22  literally has no prior record.
23          THE COURT:  All right, based on all that I have
24  heard here and on my review of the defendant's motion to
25  review the detention order I find that the magistrate judge

1  properly found that no conditions of release would assure the
2  safety of the community or --  assure the safety of the
3  community.  I think that the circumstances that the defendant
4  cites in his motion to review the detention order properly go
5  to the defendant's appearance at trial and that this case is
6  governed by United States v. Supa, 799 Fed 2d 115.  The order
7  of the magistrate will stand, and the defendant will be
8  detained pending trial.
9          Mr. Abeln, I think your client has something to say
10 to you.  He is raising his hand.
11         MR. ABELN:  He wants to address the Court, and I
12 also -- I have received a couple letters, well, a couple, I
13 have received many letters from Mr. Watson and many phone
14 calls through other people, and I'm not sure whether he is
15 pleased with my representation, and I think that matter
16 should be addressed at this point, whether or not I should be
17 -- I should ask to withdraw.
18         THE COURT:  I know from the clerk's office that Mr.
19 Watson has addressed letters to the Court previously.  I
20 believe it's Mr. Watson, is it, Miss Kennedy?
21         THE CLERK:  I believe so.
22         THE COURT:  One of the defendants in this matter
23 has written the Court, and those letters have been returned
24 consistent with my customary instruction to the defendant
25 that they should communicate with the Court only through

1    counsel.
2         Mr. Watson, is there an issue with your lawyer
3    here?
4         THE DEFENDANT: Well, I'm sorry, Your Honor, I just
5    -- I just want to say -- I just want to say just basically in
6    addition, I mean, I understand and I respect the fact that
7    you ruled, okay. In 1988, in 1988 I got caught with drugs in
8    New Jersey. I was 18 years old. I did 6 years. I have been
9    home.
10        Since I have been home, Your Honor, I have
11   maintained employment. I have kept regular contact with my
12   parole officer. It is through the parole office that I was
13   able to get my job up at the Harrisburg School District
14   working as a security guard, hall monitor. Prior to that
15   job, Your Honor, I worked at Gannett Flemming Engineers and
16   Planners over in Camp Hill on Hartsdale Drive.
17        My institutional jacket, as well as my street
18   record, has been impeccable. I have went through the
19   director of the parole office, Mr. Fielder, who would no
20   doubt attest to the fact that I have done nothing wrong.
21        Mr. Juba, the lead investigator in this
22   investigation right here, came out to the county to take me
23   downtown on May -- on June 8. When he came up to the county,
24   he brought a Detective Lau.
25        With respect to the charge, Your Honor, in 1997

1   Detective Lau charged me with aggravated assault, reckless
2   endangerment.  They realized that they had the wrong person
3   in custody, and subsequently I was released on December 17
4   after he came out on December 16 at 9:30 p.m. to tell me that
5   they had the wrong person.  I sat out at the county for 2 and
6   a half months, Your Honor.
7           In this particular instance there has, even in the
8   indictment, Your Honor, even in the indictment, the eight
9   counts of the indictment, Your Honor, reflects of an
10  investigation that went on for 14 months, but the actual
11  investigation only went on for a period from September 15
12  until March 14.  The principal subjects of this
13  investigation, Your Honor, were Miss Connie Brown and Larnell
14  Morrison himself, and it was Miss Brown's residence that this
15  alleged activity took place from.  Nowhere in this affidavit
16  is my name mentioned.  The indictment itself is inconsistent
17  with the affidavit and the period in which the investigation
18  actually took place.
19          When Mr. Juba came out to the county, he brought
20  Detective Lau for the mere purposes of him identifying me.
21  For when I went up to the cage, he asked for John Watson, I
22  said, "I am John Watson."  He said, "You have to be kidding,
23  I have never seen you before."  I said, "Thank you for
24  confirming that, but I remember seeing you."  He said, "Well,
25  where have you seen me at?"  I said, "Me and my fiancee when

1  you were coming back from a Harrisburg Senators game one day,
2  you and your son," he has a son, between six and eight, "we
3  were at the Dairy Queen on 22, and we were talking about
4  trucks and wild life," which were two of his favorite
5  subjects so he said. I knew that Mr. Juba never knew me.
6      Your Honor, I stand before you, I am an innocent
7  man. I haven't done anything to violate anyone or to violate
8  the criminal justice system since I was 18 years old.
9      My mother, my sister, they are sitting here right
10 here, and I have done nothing. I have worked ever since I
11 have been home. I file income taxes every year. Mr. Fielder
12 has worked hand in hand with me in support of all my efforts.
13     And my position, I got called at 8:30 in the
14 morning, I was running some cars to the Harrisburg auction
15 for a friend of mine who has put me in employment named
16 Jessie Say, he owns Choice Auto, and Dusan Braddock, Your
17 Honor might know Mr. Dusan Braddock. I work for him. I come
18 downtown in good faith because I know that I didn't do
19 anything wrong.
20     I don't have -- I don't have the financial
21 resources. Since I have been locked up I have lost my job up
22 at the school. I have lost my vehicle and everything. I
23 just don't have the time, the money or the energy to put into
24 this.
25     It has been very, very mental. It has been a

1   mental strain on myself and my family, and the only thing
2   that I am asking for, I really don't care what type of
3   supervision, what type of probation, I don't care what it
4   consists of, the only thing I want to do is return home.
5        I have a three year old daughter that I have
6   custody of that I haven't seen in four months because I'm too
7   embarrassed to have her come out to the county and look at me
8   through glass.
9        Your Honor, I am 110 percent innocent of any
10  wrongdoing with respect to this matter, and I am begging Your
11  Honor to reconsider my status.  Whatever I have to do I will
12  do it I swear.
13       THE COURT:  Mr. Pfisterer.
14       MR. PFISTERER:  Your Honor, while not familiar with
15  all of the details of this case as it is in fact Mr. Behe's
16  case, I would note for the Court that in my file I also have
17  a letter from Mr. Watson.  And in that letter Mr. Watson
18  indicates that while he again, as he said here in court, that
19  he hasn't committed this offense, he does acknowledge hanging
20  around with people who continue to lead negative lives and
21  with being chastised by his mother for gambling, playing dice
22  at times with money that he can't afford to lose.
23       There is also a letter in the file from Mr. Behe to
24  Mr. Watson responding to his constant letters to Mr. Behe
25  where he indicates that because of the vehemence and the

1  number of letters that Mr. Watson sent him that he asked the
2  investigators to again review the file, reinterview the
3  confidential informants and cooperating witnesses to make
4  sure that there was no mistake in this case and offered Mr.
5  Watson a polygraph which he flunked, and that's why after
6  that review that the charge is still here.
7       THE COURT:  Mr. Watson, we're all at a bit of a
8  disadvantage here today because Mr. Behe, who is the
9  prosecutor in this case, is not here to speak to me about the
10 circumstances of this alleged offense.
11      The Bail Reform Act requires that this Court find
12 or at least that this Court recognize the finding of the
13 grand jury, and that's what I need to do.  The grand jury has
14 found in this case that there is probable cause to hold you
15 on this charge, and I have to respect that.
16      THE DEFENDANT:  Yes, ma'am.
17      THE COURT:  So you come into court with a very long
18 presumption that you pose a danger to this community, and I
19 have to respect that.  So then the burden becomes yours to
20 show that you are not a danger, and, of course, you're
21 disadvantaged in being able to do that.  I hear no evidence
22 today that can rebut the presumption of the grand jury's
23 finding and of your record and the fact that you were on
24 parole when this offense occurred.
25      I will revisit the question of your detention after

1  your lawyer has had an opportunity to talk to Mr. Behe about
2  the circumstances of your case and to make any investigation
3  that he's going to do.
4          Mr. Abeln was on top of this right away, he got you
5  an early hearing, and I know he'll do that again.  Are you
6  having problems with Mr. Abeln?
7          THE DEFENDANT:  Your Honor, I have in my hand, I
8  have been trying to get this motion to show cause, a motion
9  to quash this complaint filed against me, before the
10 indictment, Your Honor, fails to charge me with any offense.
11 I am charged with an 846 without an 841, and my understanding
12 of the federal statute, and I know that Your Honor knows what
13 that is, that it submits the defendant by a recent decision
14 by the courts has made it perfectly clear the drug quantities
15 are an essential element of the offense and must be charged
16 in the indictment, submitted to the jury and proven beyond a
17 reasonable doubt.
18         There is seven consecutive sales, one joint and
19 five individual sales from Larnell to a particular
20 individual.
21         MR. PFISTERER:  Your Honor, I must interrupt.  This
22 is completely inappropriate.  That is exactly why he has an
23 attorney, to make legal argument, and that's what this is.
24 It's already obvious it's completely unfounded.  That is an
25 issue for trial, not a pretrial issue, to determine -- the

1  elements of the offense are stated in Count 8, which is what
2  he's charged with, and if he has a legal argument, it should
3  be filed in the form of a motion from his attorney.
4         THE COURT:  Mr. Watson, is what you're trying to
5  say you have some disagreement with Mr. Abeln about whether
6  or not --
7         THE DEFENDANT:  Yes, I have been begging him to
8  file this motion from the outset.
9         THE COURT:  Mr. Abeln, could you address that.
10         MR. ABELN:  Yes, Your Honor, we had tried to come
11  to an agreement as to whether or not Mr. Behe had sufficient
12  evidence even with the grand jury individual witnesses which
13  he has been unable to share with me as far as their
14  testimony, he has merely said that there are witnesses that
15  will identify my client and that will testify at trial.
16         The reason for the detention motion is that we had
17  planned originally to go to trial on June 20 and when --
18  which was the date of the scheduled trial, and the
19  co-defendants filed continuance motions of which we opposed,
20  so that we wanted to go forward at the trial, and there would
21  have been no reason to file this particular motion.  So in
22  lieu of that, the fact that this matter had been continued, I
23  asked that the Court review the detention order to get him
24  out so that it would solve the same thing.
25         I'm not sure whether there is sufficient evidence

1  Mr. Behe has. But as I understand the law, I'm not entitled
2  to know what the grand jury witnesses will say until the time
3  that they are going to testify at trial, and so I felt that a
4  motion to quash the indictment would be futile.
5      THE COURT: All right. Mr. Abeln, it was my
6  understanding that all of the parties agreed to the motion to
7  continue.
8      MR. ABELN: That was the last motion. The first
9  motion was the one that was filed by Rex Bickley, and on June
10 9 we had prepared to go to trial on June 20, and in his
11 certificate of concurrence it says on June 9 counsel for the
12 defendant contacted Greg Abeln, counsel for Watson, who
13 concurs with respect to Defendant Larnell Morrison but does
14 not concur with respect to his own client John Watson. Then
15 at that point this matter got continued, and the last time
16 trial had been scheduled I think Mr. Bickley was fired or
17 released from representation, and Mr. West took over the
18 representation of the other individual. The trial had been
19 scheduled at a time when I was in trial in Fulton County, so
20 I couldn't attend that trial, and that was the reason for the
21 last concurrence but not the initial concurrence.
22     THE COURT: Well, back to the probable cause
23 finding. The grand jury has found probable cause in this
24 case. I don't know what Mr. Behe has against any particular
25 defendant, but I know he's a fair-minded person, and I'm

```
 1   hoping that you are going to meet with him in the next few
 2   days when he is back in the courthouse and see if this is
 3   something that you can address with Mr. Behe.
 4             MR. ABELN:  That's exactly, now that the detention
 5   order has been denied, that's exactly what I intend to do.
 6             THE COURT:  If you want to make a motion on the
 7   basis of the danger to the community, I will be glad to take
 8   it up again.
 9             Mr. Watson, I need to know today before you leave
10   here, I know you may have some quarrels with how Mr. Abeln is
11   handling the case, but he is the lawyer, and you have to
12   defer to his judgment in these matters.  Are you able to do
13   that?
14             THE DEFENDANT:  I don't believe I am, Your Honor.
15             THE COURT:  Why not?
16             THE DEFENDANT:  Because I have been trying
17   unsuccessfully to get this motion filed.  I sat out at the
18   county for a month before I seen him and then over two months
19   before I had a chance to see him again.  I have been trying
20   to get this motion filed ever since I have been out at the
21   county because, Your Honor, I know that -- I know for a fact
22   that there is not one -- I offered when I went downtown for
23   interrogation and I asked him bring Mr. Behe upstairs, if you
24   can show me one tangible piece of evidence against myself,
25   that I would plead guilty today, I would plead no contest
```

1    today. They told me that, "We know that you don't know Mr.
2    Morrison, and you don't see him that often." I said, "Well,
3    that is inconsistent with what you charged me with. You
4    charged me of having knowledge of what you allege this
5    individual is being involved in an ongoing concern." I asked
6    them to show me any tangible piece of evidence and I will
7    plead guilty today, I would plead guilty right now. I know
8    that none exists, Your Honor, none. I wasn't even part of
9    the attorney general's investigation. I was only mentioned
10   on the federal indictment.
11           THE COURT: All right. Mr. Watson, anybody that is
12   assigned to handle your case is going to make certain legal
13   judgments that you, as a lay person, may not always fully
14   understand or appreciate. You're going to be in the position
15   of either representing yourself or having to put your trust
16   in a lawyer who knows the system and understands the law.
17   You need to be thinking about that between now and when I see
18   you again.
19           THE DEFENDANT: I need new representation, Your
20   Honor, I'm asking for it.
21           THE COURT: I cannot find on the basis of what you
22   have stated here that you have established the grounds for me
23   excusing Mr. Abeln from this case and assigning you a new
24   lawyer. From what I hear you saying, you're going to have
25   the same problem with any lawyer I give you. If they're not

1  doing the case the way you want them to do it, then you're
2  going to have a problem with that.  That's not how it works.
3  Do you want to represent yourself?
4       THE DEFENDANT:  Your Honor, what am I supposed to
5  do, I'm not trying -- I'm asking for any type of information.
6  How am I going to mount any type of defense when I have no --
7  there is nothing against me.  There is nothing.  There is
8  nothing on me.
9       THE COURT:  Mr. Watson, why don't you take your
10 seat, and I want to address you and Mr. Abeln.  Mr. Abeln, I
11 understand you're going to meet with Mr. Behe in the next few
12 days.
13      MR. ABELN:  That's correct, Your Honor.
14      THE COURT:  I'll set this on the docket for some
15 day next week, and we can address the matter of detention if
16 that is an issue that is properly brought back before the
17 Court and also the matter of your representation of Mr.
18 Watson.
19      Mr. Watson appears to be very opinionated, very
20 strong willed and very articulate and intelligent.  That
21 doesn't always make for the easiest client, but it is clear
22 to me that he can be of great assistance in his defense in
23 this matter and somebody that you ought to be able to work
24 with, I hope you can, but if it comes to your being excused
25 from the case, we will do that if that's the right thing.

1   All right, anything else? Mr. Pfisterer.

2   MR. PFISTERER: Not by the government, Your Honor.

3   THE COURT: All right, we'll be in recess.

4   (The proceedings concluded.)

5   I hereby certify that the proceedings and evidence

6   of the court are contained fully and accurately in the notes

7   taken by me on the hearing to review the detention order of

8   the within cause and that this is a correct transcript of the

9   same.

*Monica L. Zamiska*

Monica L. Zamiska, RPR

Official Court Reporter